UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLAUDIA DUARTE GARCIA,
Individually and as Personal Representative
of the Estate of Alexis A. Couyutas Duarte,

Plaintiff,

v. CIVIL ACTION NO. 26-11322-GAO

SANJAY SAINI,
as Personal Representative
of the Estate of Michael W. Groff, and
DYNAMIC SPIN SOLUTIONS LLC,

Defendants.

ORDERS ON
THE PLAINTIFF'S MOTION FOR REAL ESTATE ATTACHMENT (#14)
AND THE DEFENDANTS' MOTION TO STRIKE (#30)[1]

---

[1] District Judge O'Toole referred these motions to this court. (#34.) If the court were to find attachment warranted, consistent with *ML-CFC 2007-6 P.R. Properties, LLC v. BPP Retail Properties, LLC*, 951 F.3d 41 (1st Cir. 2020), it would issue a recommended decision of attachment under Fed. R. Civ. P. 72(b)(2). *See ML-CFC*, 951 F.3d at 48-49 (finding that a motion to appoint a receiver, which the Magistrate Judge granted, was "dispositive" within the meaning of Fed. R. Civ. P. 72(b) given that the motion sought to have a court undertake an action that would have a significant impact on a party's ability to manage and control its property during the course of the litigation and involved a preliminary determination of which party was likely to succeed on the merits). The court does not find attachment warranted on the present factual record and denies the Plaintiff's motion without prejudice. Objections are to be filed under Fed. R. Civ. P. 72(a). *See Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 6 (1st Cir. 1999) (treating order as non-dispositive because "whatever [the Magistrate Judge] might theoretically have done -- in fact [he] imposed only a monetary sanction"). As for the Defendants' motion, courts generally regard orders striking expert opinions as non-dispositive, *see Woods Hole Oceanographic Institution v. ATS Specialized, Inc.*, #17-cv-12301-NMG, 2021 WL 9860239, at *1 n.2 (D. Mass. May 27, 2021) (Boal, M.J.) (Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)), *objections overruled in part and sustained in part*, #17-cv-12301-NMG, #674 at 11-15 (D. Mass. Aug. 20, 2021)), unless the order is "tantamount to an involuntary dismissal," *see Yang v. Brown Univ.*, 149 F.R.D. 440, 442-43 (D.R.I. 1993).

I. Introduction.

Michael Groff was flying a Mitsubishi MU-2B-40 owned by Dynamic Spine Solutions LLC ("Dynamic") when the plane crashed, tragically killing Groff and the plane's other occupants, including Alexia Couyutas Duarte, the daughter of plaintiff Claudia Duarte Garcia.[2] The Plaintiff, individually and as the personal representative of her daughter's estate, has sued Sanjay Saini, the personal representative of Groff's estate, and Dynamic, for negligence and conscious pain and suffering. (#1.)[3]

According to the complaint, the Mitsubishi MU-2B-40 is a "high performance, twin turbo complex aircraft requiring pilots to have specified training experience" under 14 C.F.R. §91.1701. (#1 ¶ 7.) Around 11:34 AM on April 12, 2025, the plane departed Westchester County Airport and at Columbia County Airport,[4] Groff requested an approach to a runway from air traffic control ("ATC"). *Id*. ¶¶ 8, 10. "The ceiling was 400 overcast." *Id*. ¶ 10.

Around 11:57 AM, Groff advised ATC that he missed the approach and requested another, "instead of utilizing the published missed approach." *Id*. ¶ 11.

---

[2] The court understands from reporting after the crash that Groff's wife, two of their children, and their late daughter's boyfriend were also on board the plane. "Investigators outline final moments of plane crash that killed former college soccer star and family," Associated Press, May 9, 2025, available at: https://apnews.com/article/plane-crash-new-york-massachusetts-3ffa8f5cbf70bcffa6279e6463826b0d (last visited October 2, 2026).

[3] According to the complaint, Dynamic is a Massachusetts LLC and Saini, who is Dynamic's "only current member," is "a citizen residing at" an address in Massachusetts. (#1 ¶ 3.) The Plaintiff is "a citizen residing in" Florida. *Id*. ¶ 1.

[4] These airports are in New York. Groff and some passengers may have originally departed from Massachusetts. "Investigators outline final moments of plane crash that killed former college soccer star and family," Associated Press, May 9, 2025, available at: https://apnews.com/article/plane-crash-new-york-massachusetts-3ffa8f5cbf70bcffa6279e6463826b0d (last visited October 2, 2026).

"While on the missed approach, [ATC] gave [Groff] three (3) low altitude alerts, which were not acknowledged." *Id.* ¶ 12. The plane crashed about ten miles from Columbia County Airport. *Id.* ¶ 13.

Without identifying what specifically was inadequate about the maintenance and pre-flight inspections, the Plaintiff asserts in the complaint that the crash was caused by Groff and Dynamic's failure to maintain the plane in a safe and air-worthy condition and failure to conduct adequate pre-flight inspections. *Id.* ¶ 14. The Plaintiff also asserts in the complaint that the crash was caused by a failure to adhere to federal regulations, pilot error, and inadequate training. *Id.* 14 C.F.R. §91.1701 is the only regulation identified in the complaint.

The Defendants answered the complaint on April 16, 2026, (#7), and a week later, the Plaintiff moved under Mass. R. Civ. P. 4.1(c) for real estate attachment of $5 million, including the property located at 25 Audubon Road in Weston, Massachusetts, (#14), which is where, according to the Defendants, Groff's surviving daughter lives. The Defendants assert that Groff's surviving daughter is still considered a minor child under Mass. Gen. Laws ch. 188, § 1, and recorded a continuation of homestead on September 15, 2025. (#23 at 12-13); *see also* #23-1.

The Plaintiff's motion for attachment was supported by a brief memorandum of law, exhibits, and affidavits of the Plaintiff and her attorney, Louis J. Muggeo. (##14-1, 15-18.) The Plaintiff argued that she was reasonably likely to succeed in proving that Groff was negligent in failing to acknowledge the three low altitude alerts and that his training under 14 C.F.R. §91.1701 was inadequate. (#15 at 2.)

The Plaintiff also argued that Couyatas Duarte was 24 years old and an aspiring Harvard Law School student and the potential judgment for the value of her life and punitive damages

exceeds Dynamic's insurance coverage for bodily injury to a passenger, which is $100,000, and the Defendants' assets. *Id*. at 3; *see also* #17 at 4, #18 at 4 (the insurance policy).

In her affidavit, the Plaintiff attested that at the time of the accident, her daughter was 24, had recently graduated from Swarthmore College, and was accepted and planned to attend Harvard Law School. (#17 at 1 (¶ 3).) She attested to the insurance coverage. *Id*. at 2 (¶ 6). Finally, she purported to quote from a preliminary report of the National Transportation Safety Board ("NTSB"). The quoted portion set out the interactions between Groff and ATC and also stated: "Recorded security camera video showed that there was a low overcast cloud layer present at the time of the accident. The airplane was observed in the video descending from the cloud layer in a steep descent until it impacted terrain." *Id*. at 1-2 (¶ 5).

Attorney Muggeo attested to the insurance coverage, *see* #18 at 2 (¶ 7), purported to quote the same portion of the preliminary NTSB report, *see id*. at 1 (¶ 3), and authenticated a bond filed in the Middlesex County, Massachusetts Family and Probate Court, which he argued showed that the Audubon Road property is currently worth about $1.5 million, *see id*. at 2 (¶ 8); *see also id*. at 6-7 (the bond).

Attorney Muggeo also attested that he is a "licensed private pilot" and that "a large part of [his legal] practice deals with aviation law." He attested that the Mitsubishi MU-2B-40 "is a highly complex twin turbo airplane requiring special certification and training pursuant to 14 C.F.R. [§]91.1701"[5] and that "[b]ased upon preliminary information reviewed as well as [his] experience as a private pilot, it appears that the primary cause of this tragic accident was pilot error." (#18 at 1-2 (¶¶ 4-5).)

[5] The Defendants have admitted in their answer that the Mitsubishi MU-2B-40 was subject to 14 C.F.R. §91.1701 but have denied that the plane was "complex" and that pilots were required to have "specialized training and experience." (#7 ¶ 7.)

The Defendants filed a lengthy opposition to the motion for attachment, arguing that factual disputes precluded attachment, *see* #23 at 6-7,[6] and that the Plaintiff's evidentiary showing was deficient. The Defendants argued that the preliminary NTSB report was inadmissible as hearsay and unfairly prejudicial, *see id*. at 7-9, and Attorney Muggeo's personal beliefs are not evidence, and he is prohibited, under the Massachusetts Rules of Professional Conduct, from acting both as the Plaintiff's advocate and her witness, *see id*. at 9-10. The Defendants also argued that the Plaintiff's affidavits did not identify a methodology for calculating damages. *Id*. at 10-11.

With leave, the Plaintiff filed a reply brief, (##27, 29), accompanied by a table of verdicts and settlements in cases that are allegedly comparable to this one, (#29-1), and a "Declaration of Christopher John Hyldburg," (#29-2), which was signed on the same day that the reply brief was filed. *Id*. at 3.

Hyldburg "opine[s] based upon a reasonable degree of aeronautical certainty that the primary cause of the April 12, 2025 incident was pilot error." (#29-2 ¶ 23.) He identifies the materials that he relied on and explains how he formed the opinion. *Id*. ¶¶ 10-21. Among other information, Hyldburg reviewed Federal Aviation Administration ("FAA") records showing that Dynamic bought the Mitsubishi MU-2B-40 in October 2024, and asserts that Groff only had six months of experience with the plane and that six months of experience with the plane of that type and complexity is inadequate. *Id*. ¶¶ 15, 17. He furthers claims that "[a] review of the FAA records indicates that relevant information regarding [Groff] has been 'purged from the airmen database.'" *Id*. ¶ 18. He provides a list of the federal regulations which he believes Groff violated. *Id*. ¶ 24; *see id.* at 4.

---

[6] Judge O'Toole, at the Plaintiff's request, ordered the Defendants not to transfer or further encumber the Audubon Road property while the motion for attachment is pending, (##20, 21), and, earlier today, denied the Defendants' motion for clarification of that order, (##23, 46).

The Defendants have moved to strike, (#30), urging the court to decide the Plaintiff's motion for attachment on the record that existed when the Defendants filed their opposition or, in the alternative, to allow them to conduct targeted discovery of Hyldburg's declaration, consult their own expert, investigate the allegedly comparable verdicts and settlements, and submit supplemental briefing. *See also* #31.

The Plaintiff defends the belated submission of Hyldburg's declaration and the verdicts and settlements as "solely in direct response and rebuttal to" the Defendant's opposition to the motion for attachment, *see* #43 at 2, but does not oppose allowing the Defendants to submit supplemental briefing, *see id*. at 6-7.

II. Law.

Under Fed. R. Civ. P. 64(a), "at the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment…." *Id*. In Massachusetts, attachment of property is governed by Mass. Gen. Laws ch. 223, §§ 42-83, and implemented through Mass. R. Civ. P. 4.1. *LaRock v. Mardis Gras Entertainment, Inc*., #3:20-cv-10083-KAR, 2021 WL 2116260, at *5 (citations omitted).

Under Mass. R. Civ. P. 4.1(c), a plaintiff seeking attachment must show both a reasonable likelihood of success on the merits and a reasonable likelihood of recovering judgment equal to or greater than the amount of the attachment sought over and above any liability insurance shown by the defendant to be available to satisfy the judgment. *LaRock*, 2021 WL 2116260, at *6 (citations omitted). Courts in this district have interpreted "reasonable likelihood" to mean "more likely than not, based on articulable reasons." *Id*. (quoting *Lockwood v. Madeiros*, #4:18-cv-40143-DHH, 2018 WL 4087938, at *4 (D. Mass. Aug. 27, 2018)); *see Pitts v. DiPierro*, #1:24-cv-11148-JEK,

2025 WL 723406, at *4 (D. Mass. Mar. 6, 2025); *Safeguard Properties Mgmt., LLC v. Zoll*, #1:22-cv-11004-DJC, 2022 WL 16838781, at *1 (D. Mass. Feb. 8, 2022). Generally, a motion for attachment "must be supported by one or more affidavits that 'shall set forth specific facts sufficient to warrant the required findings and shall be upon the affiant's own knowledge, information or belief…." *LaRock*, 2021 WL 2116260, at *5 (quoting *Lockwood*, 2018 WL 4087938, at *4) (quoting Mass. R. Civ. P. 4.1(h)); *but see BRT Mgmt., LLC v. Malden Storage, LLC*, #1:17-cv-10005-FDS, 2022 WL 95926, at *4 (D. Mass. Jan. 10, 2022).

III. Reasonable Likelihood of Recovering Judgment of $4.9 Million or More.

The Plaintiff presents evidence that the applicable insurance coverage is limited to $100,000, and the Defendants have not presented contrary evidence. *See* #23 at 10 ("It is undisputed that at least $100,000 in insurance coverage is available to satisfy a potential judgment"). Because the Plaintiff seeks a $5 million attachment, the relevant question is whether there is a reasonable likelihood that she will recover judgment of $4.9 million or more.

First, so much of the Defendants' motion to strike the allegedly comparable verdicts and settlements and related arguments from the Plaintiff's reply brief is denied as moot. On the one hand, the Plaintiff's claim that the verdicts and settlements were offered "solely in direct response and rebuttal to" the Defendants' opposition to the motion for attachment is unpersuasive. *See* #43 at 2. The Defendants' argument was that the Plaintiff had failed to identify her methodology for calculating damages. (#23 at 10-11.) Direct responses to that argument include "I did identify my methodology" or "I did not need to identify my methodology." They do not include: "Here is my methodology."

On the other hand, the court is not persuaded by the Defendants' argument that because the Plaintiff failed to identify her methodology for calculating damages, her motion for attachment

must be denied. The only case on which the Defendants rely -- *LaRock*, *see id*. at 11 -- is readily distinguishable. That putative class action involved claims by exotic dancers under wage laws concerning the deduction of locker room and disc-jockey fees and the failure to pay overtime. Magistrate Judge Robertson rejected the named plaintiffs' damages calculation as it rested on assumptions that the class would consist of 200 members who worked 200, 6-hour shifts with no basis in the factual record for such assumptions. The calculation also rested on the assumption that the class would be certified. The named plaintiffs did not address class certification in their opening memorandum and in their reply brief they argued, incorrectly, that they did not have to show a reasonable likelihood of class certification. *LaRock*, 2021 WL 2116260, at *8. Their alternative argument that there was a reasonable likelihood of class certification was insufficiently developed. *Id.*

This is not a putative class action and the amount of attachment sought is not based on assumptions about the number of members, how many shifts they worked, and what length. There is one plaintiff who, from personal knowledge, attests to her daughter's relatively young age at the time of her death and her current and anticipated level of education and anticipated career path.

*LaRock* does not require a list of arguably comparable verdicts and settlements, and the Defendants cite no case requiring such a list. In support of their argument that the Plaintiff "plucked [$5 million] from thin air," *see* #23 at 11, the Defendants had ample opportunity and reason to create and submit their own list of arguably comparable verdicts and settlements. They did not do so.

IV. <u>Reasonable Likelihood of Success on the Merits</u>.

In her reply brief, the Plaintiff makes no argument that her own affidavit or Attorney Muggeo's shows a reasonable likelihood of success on the merits of her claims. Rather, she relies

on Hyldburg's declaration, asserting that it "plainly demonstrates how [Groff] breached his duty of care and why he was negligent." (#29 at 2-3.)[7]

Again, the Plaintiff's claim that this declaration was offered "solely in direct response and rebuttal to" the Defendants' opposition to the motion for attachment is unpersuasive. *See* #43 at 2. The Defendants' argument was that the Plaintiff's existing affidavits were insufficient. (#23 at 5-10.) The direct response to that argument is: "The affidavits were sufficient." It is not: "Here is a new affidavit."[8]

The court would be inclined to strike Hyldburg's declaration but ultimately denies the remainder of the Defendants' motion as moot. The court has considered the declaration and is still unable to find a reasonable likelihood of success on the merits of the Plaintiff's negligence claim. Under Massachusetts law, the elements of a negligence claim are: (1) the defendant owed the plaintiff a duty of reasonable care; (2) the defendant breached this duty; (3) damage to the plaintiff

---

[7] Even in reply, the Plaintiff makes no argument as to the conscious pain and suffering claim. *See id.* The Plaintiff's affidavit adds nothing to the analysis of the merits of the negligence claim. As for Attorney Muggeo's, the court notes that under Mass. R. Prof. Con. 3.4(e)(3), a lawyer "may argue, upon analysis of the evidence, for any position or conclusion with respect to" "the culpability of a civil litigant," and under Rule 3.4(e)(2), the lawyer is prohibited from asserting personal knowledge of facts in issue "except when testifying as a witness." The Massachusetts Supreme Judicial Court has held that Rule 3.7(a), the advocate-witness rule, bars the participation of the lawyer who is likely to be a necessary witness <u>at trial</u>; it does not bar the participation of a lawyer who is likely to be a necessary witness prior to trial. *Smaland Beach Ass'n, Inc. v. Genova*, 461 Mass. 214, 226-27 (2012); *see also Bridgeman v. Dist. Att'y for Suffolk Dist.*, 471 Mass. 465, 489 (2015) (where plea counsel were acting in the roles during motion proceedings before judges, "[t]here will be no jury that might become 'confused by the combination of the roles of attorney and witness'") (quoting *Steinert v. Steinert*, 73 Mass. App. Ct. 287, 291 (2008)). Anyway, Attorney Muggeo did not explain the basis for his "pilot error" opinion adequately.

[8] Neither case on which the Plaintiff relies supports her argument. *See* #43 at 2. *Kyles v. Beaugard*, #15-cv-8895, 2023 WL 5277882 (N.D. Ill. Aug. 16, 2023), is inapposite; the court was merely commenting on the proposition that the failure to return to an issue in a reply brief may, or may not, result in a waiver of the issue. *Id*. at *21. In *Apple Inc. v. Andrea Electronics Corp*., 949 F.3d 697 (Fed. Cir. 2020), the reply brief did "not cite any new evidence…." *Id*. at 706.

resulted; and (4) the breach of the duty caused this damage. *Brown v. United States*, 557 F.3d 1, 4 (1st Cir. 2009). The defendant's breach of the duty must be the but-for cause of the plaintiff's injuries as well as the proximate cause, meaning that the plaintiff must show that her injuries were reasonably foreseeable. *Staelens v. Dobert*, 318 F.3d 77, 79 (1st Cir. 2003).

First, Hyldburg's declaration focuses on Groff's conduct, and does not show a reasonable likelihood of success on the merits of a negligence claim against Dynamic. As for Groff's estate, Hyldburg's assertion that Groff had just six months of experience with the Mitsubishi MU-2B-40 and did not receive adequate training is not supported by the asserted fact that Dynamic bought the plane in October 2024 or that Groff's FAA records were "purged." *See* #29-2 ¶¶ 15, 17-18. Groff could have had experience with that type of plane before Dynamic bought one and the court cannot speculate as to the content of missing records.

It is not apparent from his declaration that Hyldburg would opine that the primary cause of the crash was pilot error regardless of Groff's experience with the Mitsubishi MU-2B-40 and training. *See* #29-2 ¶ 19 (describing the "flight characteristics," presumably "erratic speed control, overshooting the initial approach segment, an inability to stabilize the approach, and an inability to maintain aircraft control," *see id*. ¶ 13, and "the weather conditions" as "contributing factors"). Accordingly, the court is unable to find from his declaration a reasonable likelihood of success on the merits of the Plaintiff's negligence claim against Groff's estate.

V. Conclusion.

For the reasons set out above, the Defendants' motion to strike, (#30), is denied as moot, and the Plaintiff's motion for attachment, (#14), is denied without prejudice.

October 9, 2026

/s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge